IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| ANGELICA C. O/B/O, <br> A.P.C.C., a minor, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | REPORT & RECOMMENDATION |
| v. | ) <br> ) | Case Number: 1:20-cv-00171 |
| KILOLO KAJIKAZI, | ) <br> ) | District Court Judge Howard C. Nielson Jr. |
| Acting Commissioner of <br> Social Security, | ) <br> ) <br> ) | Magistrate Judge Dustin B. Pead |
| Defendant. | ) <br> ) | |

On March 18, 2021, District Court Judge Howard C. Nielson Jr. referred this matter to Magistrate Judge Dustin B. Pead pursuant to a 28 U.S.C. § 636(b)(1)(B) referral (ECF No. 15).

Currently pending before this court is Angelica C.'s [1] appeal of the Commissioner's final decision denying her application for Child Insurance Benefits on behalf of her minor son A.P.C.C (ECF No. 3.) After careful consideration of the administrative record, the parties' briefs, oral argument, and the relevant law, the undersigned now rules as follows and recommends that the case be remanded to the Commissioner for further administrative proceedings consistent with this opinion.

---

[1] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

## I. PROCEDURAL BACKGROUND

The procedural history of this case is lengthy. On September 20, 2013, Angelica C. ("Plaintiff" or "Ms. C") filed an application for Child's Insurance Benefits on behalf of her minor son A.P.C.C. ("A.P.C.C." or "claimant") (Tr. 389-95).[2] After initial and reconsideration level denials, Ms. C and medical expert Ronald T. Houston Ph.D., testified at a hearing before Administrative Law Judge ("ALJ") Gilbert Martinez (Tr. 144; Tr. 156). ALJ Martinez issued an unfavorable decision after which the Appeals Council remanded the case to the ALJ for failure to obtain Plaintiff's waiver of right to counsel (Tr. 101-33; Tr. 160-75; Tr. 180-81).

On remand, Ms. C and medical expert Faren Akins Ph.D., J.D., appeared and testified. On November 28, 2017, ALJ Martinez issued a second unfavorable decision (Tr. 71-99; Tr. 186-202). The Appeals Council, however, found error and again remanded the case for further administrative proceedings (*Id.*; Tr. 209-11). Thereafter, Plaintiff and a third medical expert appeared and testified before ALJ Jeffery Mastin ("ALJ Mastin") (Tr. 34-69). On June 18, 2020, ALJ Mastin issued a written Decision ("Decision") denying Plaintiff's application for benefits on behalf of A.P.C.C. (Tr. 10-18; Tr.34-69). *See* 20 C.F.R. § 416.924(a).

On December 17, 2020, Plaintiff filed this civil action seeking judicial review of ALJ Mastin's Decision (ECF No. 3). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Oral argument on Plaintiff's appeal was heard on December 9, 2021 (ECF No. 35; ECF No. 39).

---

[2] Tr. refers to the transcript of the administrative record before the Court.

## II. THE SEQUENTIAL EVALUATION PROCESS

A claimant under the age of 18 is considered disabled if they are not engaging in substantial gainful activity and have a physical or mental impairment, or combination of impairments, that results in marked and severe functional limitations, that have lasted or can be expected to last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.924(d). A claimant with a severe impairment is first evaluated under the relevant listings and then under a functional equivalence approach.[3] *Id*.

Generally, it is appropriate to evaluate how the impairments affect a child's ability to function age-appropriately. "Functioning" incorporates activities that a child may do throughout the day and include how the child gets dressed, cooperates with care givers, plays with friends and does class assignments. *See* SSR 09-2p, Title XVI: Determining Childhood Disability, 2009 WL 396032 at *2.

In order to be functionally equal to the listings, a child must have marked limitations in two of six functional domains, or an extreme limitation in any one functional domain. *See* 20 C.F.R. § 416.926a(a). The six functional domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). A marked limitation seriously interferes with the child's ability to independently initiate, sustain or complete activities in a given domain. It is more than moderate,

---

[3] In determining whether a child functionally equals a listing, the Agency uses a "whole child approach." *See* SSR 09-1p, 2009 WL 396031. Of further consequence, the adjudicator must assess the child over a period of time. *See* SSR 09-2p, 2009 WL 396032 at *2.

but less than extreme. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation seriously limits the child's ability in the given domain. And, while it is "more than marked," it does not require a total lack of function. 20 C.F.R. § 416.926a(e)(3).

Under these six functional domains the ALJ is tasked with examining the case record and comparing claimant's functioning to functioning typical of a child in the claimant's same age group. *See* 20 C.F.R. § 416.926a(f)(1). In regard to each domain, the regulations provide guidance and offer specific examples of functioning that is considered appropriate for each age group. *See* 20 C.F.R. §§ 416.926a(g)-(k); 20 C.F.R. § 416.926a(k)(2)(i)-(v).

### III. THE ALJ'S DECISION

At step one of the sequential evaluation process ALJ Mastin determined that A.P.C.C. had not engaged in substantial gainful activity since the application date. *See* 20 C.F.R. § 416.972(b).[4] At step two, ALJ Mastin found A.P.C.C.'s severe impairments included moderate persistent asthma, autism and attention deficit hyperactivity disorder ("ADHD"). *See* 20 C.F.R. § 416.924(c). The ALJ concluded that A.P.P.C's seasonal allergies, speech delay and developments disorder were not severe and did not, when considered singly or in combination, cause more than minimal functional limitations (Tr. 11). *Id.*

At step three, the ALJ determined that A.P.C.C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments or that functionally equaled the severity of the listings. *See* 20 C.F.R. §§ 416.924, 416.925, 416.926, 416.924(d) and 416.926(a). Specifically, the ALJ concluded that A.P.C.C. had less than marked limitations in acquiring and using information, attending and completing tasks,

---

[4] "Substantial gainful activity" is defined as work that involves significant physical or

interacting and relating with others and caring for himself (Tr. 12-14). Further, the ALJ found that A.P.C.C. had no limitations related to health and physical well-being and in moving about and manipulating objects (Tr. 14). Thus, because A.P.C.C. did not have marked limitations in two domains of functioning, or extreme limitations in one area of functioning, claimant's impairments did not functionally equal a listed impairment and ALJ Mastin concluded that A.P.C.C. was not disabled (Tr. 10-18). The Appeals Council denied Plaintiff's request for review of ALJ's Mastin's Decision (Tr. 1-3).

## IV.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080 (10th Cir. 2007). The Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hendron v. Colvin,* 767 F.3d 951, 954 (10th Cir. 2014).

Substantial evidence review is a deferential, and the agency's factual findings are considered to be "conclusive" if they "are supported by 'substantial evidence.' " *Biestek v. Berryhill*, ⸺ U.S. ⸺, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504, 508 (2019) (*quoting* 42 U.S.C. § 405(g)). As the Supreme Court confirmed, the substantial evidence threshold "is not high" and deference should be given to the presiding ALJ "who has seen the hearing up close." *Id.* at 1154, 1157. Substantial evidence is "more than a mere scintilla" and "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154. (internal quotation omitted).

---

mental activities and is done for pay or profit. *See* 20 C.F.R. § 416.972.

## V. **ARGUMENTS**

Plaintiff offers four main challenges to the ALJ's Decision. First, Ms. C. alleges that the ALJ failed to consider whether A.P.C.C. was disabled for any continuous period of 12 months or longer. Second, she argues the ALJ failed to fully evaluate some evidence and mischaracterized other evidence. Third, Plaintiff maintains there is a constitutional defect in the Social Security Administration's structure and as a result the ALJ lacked the legal authority to determine this case.[5] Finally, given the case's lengthy procedural history, Plaintiff asserts that an outright award of benefits is appropriate. [6]

Upon review the court finds Plaintiff's second argument meritorious and declines to address the remaining challenges. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (recognizing that under the doctrine of constitutional avoidance courts should not reach constitutional issues unless they must do so); *Taffy D. v. Comm'r of Social Security,* 2021

---

[5] The Commissioner of the Social Security Administration is the singular head of the Agency, serves for six years and cannot be removed by the President except for cause. *See* 42 U.S.C. § 902(a)(3) (stating Commissioner serves for a six-year term and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office.") Plaintiff contends the Commissioner's insulation from removal by an accountable President violates the separation of powers and renders the Agency's structure unconstitutional. *See* DOJ July 8, 2021, Slip Opinion "Constitutionality of the Commissioner of Social Security's Tenure Protection"; *see also Collins v. Yellen,* 141 S. Ct. 1761, 210 L. Ed. 2d 432 (2021); *Selia Law LLC v. Consumer Financial Protection Bureau,* 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020).

[6] ALJ Mastin's Decision was issued nearly seven years after Ms. C filed her initial application in September of 2013.

U.S. Dist. LEXIS 207528 at *18 (Oct. 17, 2021) (declining to reach constitutional issues because "this case can be resolved on Plaintiff's other claims of error, and based on the principle of constitutional avoidance") (*citing Copeland v. Ryan,* 852 F.3d 900, 905 (9th Cir. 2017) (declining to address claim of error based on constitutional ground where case could be resolved on other grounds)).

## VI.  DISCUSSION & ANALYSIS

In simplistic terms, when evaluating medical opinion evidence an ALJ must accept and include or reject and explain. More precisely, if an opinion is accepted the ALJ must include the limitations identified by that medical source in the RFC finding. *See* 20 C.F.R. § 416.945(e); SSR 96-8p (providing that an RFC finding must account for all of the limiting effects of a claimant's impairments). On the other hand, if the ALJ does not accept all or parts of a medical opinion, the ALJ is required to explain the reasons for rejecting the probative evidence that the ALJ did not accept. *See* 20 C.F.R. § 416.927(c)(2) (requiring ALJs to provide good reasons in their decisions for the weight given to a medical source's opinions)[7]; *see also* SSR 96-8p (stating the "RFC assessment must always consider and address medical source opinions. If the ALJ's RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Social Security Act requires the Commissioner's Decision to set forth an analysis of the evidence and identify the reasons on which the analysis is based. *See* 42 U.S.C. § 405(b)(1). Here, for the reasons discussed, the court concludes that the ALJ failed to address certain evidence and mischaracterized other pieces of evidence such that remand for further administrative proceedings is appropriate.

---

[7] 20 C.F.R. § 416.927 has been rescinded, but it still applies in cases such as this one where the application was filed prior to March 27, 2017 (Tr. 389-95).

The ALJ's Decision does not formally recognize the May 9, 2017, examination report completed by Dr. Jessica Singleton (Tr. 940-42).[8] Instead, the Decision simply references Dr. Singleton's report by exhibit number (Exhibit 26F), in a string cite with several other exhibits, and is offered for the premise that claimant exhibits "normal language, vocalization, thought processes, and social skills" (Tr. 15). Yet, upon review, the totality of Dr. Singleton's report does not appear to support such a proposition.

Dr. Singleton's report references "some well-developed social and communication skills" (Tr. 941). Yet the majority of the report supports the conclusion that A.P.C.C. presented "with the social communication difficulties, lack of age-appropriate peer relationships, and repetitive behaviors characteristic of autism" (Tr. 942). Specifically, the report states that A.P.C.C. "act[ed] out aggressively towards his peers," had sporadic eye contact, flat affect and:

> exhibited behaviors and communication patters consistent with autism . . . . [For example, A.P.C.C.] often interrupted and brought up topics unrelated to the discussion, then had difficulty answering follow up questions. [Additionally, A.P.C.C.] was not able to engage in typical back and forth pretend play. When playing with the toys, [claimant] did not make any attempts to involve the examiner in his play

 (Tr. 940-942).

Based thereon, offering Dr. Singleton's report as support for claimant's "normal" language, social skills, and thought processes appears inaccurate and gives credence to Plaintiff's claim that the ALJ improperly considered only those portions that support the ultimate finding without identifying any reasons or providing an explanation for doing so. *See Robinson v.*

---

[8] While it is unclear what date the report was written claimant's intake interview and testing occurred on May 9, 2017 (Tr. 940).

*Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004); *see Switzer v. Heckler,* 741 F.2d 382, 385-86 (7th Cir. 1984) (stating it is improper for the Commissioner to "use only the portions favorable to her position, while ignoring other parts").

Likewise, the ALJ similarly misconstrues Dr. Laura Lamoreaux's June 12, 2010, psychological evaluation of A.P.C.C. (Tr. 10-18; Tr. 897-899). Again, Dr. Lamoreaux's opinion is referenced by exhibit number (Exhibit 13F/2) in a string sight and is relied upon as support for A.P.C.C.'s "normal language, vocalization, thought processes, and social skills" (Tr. 12; Tr. 15). But upon review, Dr. Lamoreaux's report indicates that A.P.C.C.'s "overall ability to understand and process information is in the Borderline range" with claimant's IQ score "being negatively impacted by his ongoing struggles with language, and the delay he experienced in acquiring understandable speech" (Tr. 897). Further, Dr. Lamoreaux confirms a pervasive developmental disorder that places A.P.C.C. "below the expected level of development for a child his age . . . particularly in the Attention and Executive Functioning, Language, and Learning and Memory Domains" (*Id*). In turn, the report states that claimant "struggled to correctly identify the feelings of others," had difficulty with sensory and tactile processing and was "more hyperactive than other children his age" (Tr. 897-898).

Here, the ALJ's Decision fails to acknowledge the substantive limitations reported by Dr. Lamoreaux based on her testing and clinical observations of A.P.C.C. And, while the ALJ is entitled to consider the reliability of Dr. Lamoreaux's report, the ALJ may not mischaracterize the substance of the report or fail to provide an explanation for rejecting the limitations documented. *See generally Bridle v. Colvin,* 2014 U.S. Dist. LEXIS 2005 12 at * 14 (*citing Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007)).

In yet another example, the ALJ also appears to have ignored the clinical observations of A.P.C.C.'s treating primary care physician, Dr. Haydee Blanca (Tr. 1339-40). Dr. Blanca's report is referenced only by exhibit number (Exhibit 43F) and put forward as support for A.P.C.C. being "alert and attentive with normal thought processes," having no significant difficulty paying attention, and having "normal gross and fine motor skills and normal activity on examination" (Tr. 13; Tr. 16). However, in October 2018 Dr. Blanca stated that A.P.C.C. had "marked impairment in eye-to-eye contact/gaze, marked impairment in facial expression, impairment in gestures and body posture associated with social interaction" and showed impairment in language delay with stereotyped and repetitive mannerisms and restricted repetitive communication (Tr. 1339). Later, in May 2019, Dr. Blanca referred A.P.C.C. to counseling and reported that A.P.C.C. "can have meltdowns or aggressive behavior" due to autism, ADHD, and mild oppositional behavior (Tr. 1144). Again, while the ALJ is entitled to consider and reject the reliability of Dr. Blanca's report, the ALJ must provide reasons for doing so and is not entitled to incorrectly portray the substance of the report.

Overall, the evidence omitted or misstated by the ALJ fairly raises the question of whether, during at least part of the relevant time period, A.P.C.C. had marked limitations or more in the functional domains of: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) health and physical well-being. Indeed, the state agency psychologists found a marked limitation in the domain of attending and completing tasks. (Tr. 138; Tr. 151). It is not within the purview of this court to make determinations as to marked or extreme limitations. Nonetheless, before a proper decision can be affirmed the ALJ must evaluate the medical evidence in a manner consistent with the regulations. Here, the Decision "fails to accurately portray the totality of the evidence, instead

considering the evidence in a piecemeal fashion" and including only that evidence that supports the ALJ"s ultimate conclusion. Therefore, remand for further consideration of the medical evidence is required. *Jensen v. Colvin,* 2014 U.S. Dist. LEXIS 71263 at *9 (D. Utah May 23, 2014).

### VII.  RECOMMENDATION

For the reasons discussed, the undersigned respectfully RECOMMENDS to the District Court that Plaintiff's application be remanded under the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.[9]

The Clerk's Office is directed to mail a copy of this Report and Recommendation to Plaintiff who is hereby notified of his right to object. Within fourteen (14) days of receiving a copy, Plaintiff may file his written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A failure to do so may constitute waiver of objections upon subsequent review.

DATED this 17th day of December, 2021.

_____
Dustin B. Pead
U.S. Magistrate Judge

---

[9] While the court does adopt Plaintiff's request for an outright award of benefits, due to the lengthy procedural history of this case, if possible, the court encourages the Commissioner to schedule a remand hearing as expeditiously as possible.